UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER E. WASHINGTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:16-cv-01016-SEB-MJD |
| | ) |
| EQUIFAX CREDIT BUREAU, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON PENDING MOTIONS (DKTS. 49, 60, 67, 71, 72, 74)**

Plaintiff *pro se* Christopher E. Washington ("Washington") sued defendant Equifax Information Services LLC ("Equifax")[1] for violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 *et seq.* Now before the Court are Washington's two *Motions for Summary Judgment*, Dkts. 49, 71 (his fourth and fifth in this case, respectively), Equifax's *Motion for Summary Judgment*, Dkt. 60,[2] and various collateral motions, to wit, Washington's *Motion to Enter News Article*, Dkt. 67, Washington's *Motion to Expedite*, Dkt. 72, and Equifax's *Motion to Strike Plaintiff's Motion for Summary Judgment*, Dkt. 74.

---

[1] Washington named "Equifax Credit Bureau" in his *Amended Complaint*, Dkt. 8, which the caption of this case reflects.

[2] Together with this motion, Equifax served on Washington the notice of summary judgment procedure to which *pro se* nonmovants are entitled under *Timms v. Frank*, 953 F.2d 281 (7th Cir. 1992), and *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). Dkt. 60 Ex. 5.

For the reasons below, Equifax's motion for summary judgment is granted. Washington's motions for summary judgment are denied. The remaining motions are denied as moot.

**Facts and Procedural Posture**

Washington's *Amended Complaint* alleges that, "on or about November 15, 2013, [he] was a victim of identity theft." Am. Compl. (Dkt. 8) ¶ 10. However, in his deposition, Washington admitted that this lawsuit stems from an incident of identity theft in 2006. Washington Dep. (Dkt. 61 Ex. B) 26:22–27:4. In either event, Washington's complaint alleges further that he notified Equifax[3] that his personal information had been stolen, Am. Compl. ¶ 11; that he applied for a loan in 2015 and was rejected "due to inaccuracies on the credit report[,]" *id.* ¶ 13; that Equifax "failed to correct" inaccuracies on his credit report, *id.* ¶ 16, and has continued to report inaccurate information, *id.* ¶ 20; and, finally, that Equifax failed to reinvestigate Washington's complaints of inaccurate information. *Id.* ¶ 21.

---

[3] In addition to Equifax, the complaint also named TransUnion and Experian, the other two major consumer credit reporting agencies. We dismissed Experian without prejudice after Washington failed to show cause why an order of the District Court for the Northern District of Indiana enjoining Washington from suing Experian unless he met certain conditions, entered as sanction for filing repetitive frivolous suits against Experian, should not apply to his claim against Experian here. Dkts. 5 (order to show cause) (citing *Washington v. Experian Info. Sols.*, 1:09-cv-335-WCL-RBC (N.D. Ind. May 3, 2010)), 14 (finding conditions set by order of Northern District not met and no cause shown why conditions should not apply). To the extent that Washington is attempting to bring Experian back into the case by a motion for summary judgment, *see* Dkt. 49, at 1 ("[Washington] is now entitled to relief from defendants Equifax, Experian Credit Bureaus . . . ."), he may not do so. (If Washington wanted to bring Experian back into the case after it was dismissed, he was at least required to serve it again.) TransUnion was dismissed with prejudice by joint stipulation. Dkt. 30.

2

On March 30, 2017, Washington filed a *Motion for Summary Judgment*, Dkt. 49, his fourth in this case, his previous three having been denied as premature or unnecessary. Dkt. 11 (denying Dkt. 10), Dkt. 16 (denying Dkt. 13), Dkt. 31 (denying Dkt. 27). Equifax responded in opposition to Washington's motion on June 27, 2017, Dkt. 59, in accordance with Magistrate Judge Mark J. Dinsmore's scheduling order. Dkt. 52.

Also on June 27, 2017, Equifax filed its own motion for summary judgment. Dkt. 60. On July 12, 2017, Washington responded in opposition, Dkt. 62; Equifax replied on July 27, 2017, Dkt. 63; and Washington filed a surreply, or a *Reply in Response to Defendant's Reply*, on August 2, 2017. Dkt. 64.

On September 25, 2017, Washington filed a *Motion to Enter News Article in Support of Plaintiff's Motion for Summary Judgment*. Dkt. 67. That motion appears to quote, without citation,[4] a "News Article Statement as of September 14, 2017[,]" Mot. (Dkt. 67), at 1, informing consumers of the 2017 Equifax data breach. One week later, on October 2, 2017, Washington filed a *Submission of Article*, Dkt. 68, consisting of a document purporting to be a release from the Federal Trade Commission, posted to the agency's website on September 8, 2017, titled "The Equifax Data Breach: What to Do," Submission (Dkt. 68), at 1, informing consumers of the 2017 Equifax data breach and recommending measures to consumers for preventing the misuse of private information exposed in the breach. (The language of this document is similar, but not identical to, the apparently quoted language of Washington's September 25, 2017, motion.) On October

---

[4] The reader is informed that she may "review this News Article from any News Company or any broadcasting company through out America." Mot. (Dkt. 67), at 2.

3

10, 2017, Equifax moved to strike Washington's *Motion to Enter News Article*. Dkt. 69. On November 15, 2017, Magistrate Judge Dinsmore denied Equifax's motion to strike, noting our court's "disfavor[]" of "collateral motions . . . in the summary judgment process[,]" Order (Dkt. 75), at 1 (quoting S.D. Ind. L.R. 56-1(i)), and casting Washington's motion as one for leave to supplement his summary judgment designations, and Equifax's motion to strike as its response in opposition. *Id.* at 2.

On October 12, 2017, Washington filed a new motion for summary judgment, Dkt. 71, his fifth in this case, despite the fact that his fourth motion for summary judgment was still pending. *See* Dkt. 49. Equifax moved to strike the motion on November 13, 2017. Dkt. 74.

On October 26, 2017, Washington filed a *Motion to Expedite Case*, Dkt. 72, informing us that "[t]he Courts response is now due . . . ." Mot. (Dkt. 72), at 1.

On November 6, 2017, Washington filed a *Submission of Discovery*, Dkt. 73, consisting of a document purporting to be a letter from AT&T, dated October 23, 2017, informing its customers of the 2017 Equifax data breach and recommending measures for preventing misuse of any stolen information. Submission (Dkt. 73), at 2.

### **Standard of Decision**

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008). On crossmotions for summary judgment, we consider each motion independently, holding each party to their respective burdens. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

## **Analysis**[5]

We read Washington's complaint to assert one claim under 15 U.S.C. § 1681e(b) for Equifax's failure to "follow 'reasonable procedures to assure maximum possible accuracy' when it prepares a credit report[,]" *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) (quoting 15 U.S.C. § 1681e(b)), and one claim under 15 U.S.C. § 1681i(a) for Equifax's breach of its "obligation to reinvestigate when a consumer

---

[5] For the sake of completeness, we note that this action appears to be improperly venued, that is, Washington appears to have filed his lawsuit in the wrong federal court. *See* 28 U.S.C. § 1391 (bases for venue). The events giving rise to this lawsuit, so far as they occurred in this state, appear to have occurred in Westville, LaPorte County (where Washington was incarcerated), Mot. Summ. J. (Dkt. 49), at 1; Fort Wayne, Allen County (where Washington asserts he now resides), Am. Compl. (Dkt. 8) ¶ 3; or Huntington, Huntington County (where Washington has a mailing address he supplies in his papers before this Court), *e.g.,* Mot. Expedite Case (Dkt. 72), at 1—none of which lies within the Southern District of Indiana. *See* 28 U.S.C. § 1391(b)(2). Equifax denies that it is an Indiana corporation. Answer (Dkt. 33) ¶ 4; *see* 28 U.S.C. § 1391(b)(1). If anywhere in Indiana, therefore, venue would be proper in the Northern District—as Washington appears to know, having filed in that court at least one lawsuit which was similar, if not identical, to this one. *Washington v. Equifax Credit Bureau*, 1:08-cv-132-PPS (N.D. Ind.).

In its *Answer* to Washington's *Amended Complaint*, Equifax "assert[ed] improper venue as a defense" and "reserve[d] the right to seek a transfer of venue[,]" Answer (Dkt. 33), at 5, but has so far declined to exercise that right. The Court may order transfer *sua sponte* "[f]or the convenience of parties and witnesses, in the interests of justice," 28 U.S.C. § 1404(a), but, in this case, we conclude that such an order would be a mere formalism. The parties' dispositive motions have been submitted, briefed, and are now ripe for decision; we cannot perceive how transfer at this stage of litigation would serve any interest of convenience or justice.

contends that [his] consumer report is inaccurate or incomplete." *Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 607 (7th Cir. 2005) (quoting *Wantz v. Experian Info. Sols.*, 386 F.3d 829, 832 (7th Cir. 2004) (citing 15 U.S.C. § 1681i(a)) (alterations omitted). Equifax reads Washington's complaint similarly, Def.'s Br. Supp. Mot. Summ. J. (Dkt. 61), at 3, as did the District Court for the Northern District of Indiana when Washington filed a nearly verbally identical complaint in that forum in 2008. *Washington v. Equifax Credit Bureau*, 1:08-cv-132, 2009 WL 3756538, at *1 (N.D. Ind. Nov. 6, 2009) (granting defendant's motion for summary judgment), *aff'd sub nom. Washington v. Equifax Info. Servs., LLC*, 373 F. App'x 633 (7th Cir. 2010).

To state a claim under Section 1681e(b), "a consumer must sufficiently allege 'that a credit reporting agency prepared a report containing "inaccurate" information.'" *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (quoting *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991)). But the FCRA is not a strict-liability statute: "[a] credit reporting agency is not liable under the FCRA if it followed 'reasonable procedures to assure maximum possible accuracy,' but nonetheless reported inaccurate information . . . ." *Id.* (quoting 15 U.S.C. § 1681e(b)).

To state a claim under Section 1681i(a), a consumer must similarly begin with a showing of inaccuracy on his credit report. *See Ruffin-Thompkins*, 422 F.3d at 608 (plaintiff must show damages as result of inaccurate information); *Sarver*, 390 F.3d at 971 (same). The credit reporting agency must then be notified of the inaccuracy before it can be held liable for failing to investigate it. *Sarver*, 390 F.3d at 971.

A credit reporting agency found to have negligently violated the provisions of the FCRA is liable for the consumer's "actual damages," costs, and fees. 15 U.S.C. § 1681o; *Henson*, 29 F.3d at 284. "Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages,'" *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001), and cannot sustain the suit for costs and fees only. *Id.* at 667. Willful violations may subject the credit reporting agency to punitive damages. 15 U.S.C. § 1681n; *Henson*, 29 F.3d at 284.

In brief, because there is no evidence that Equifax failed to maintain reasonable procedures for ensuring the accuracy of Washington's credit report, no reasonable jury could find for Washington under Section 1681e(b). And because there is no evidence that Equifax breached its obligation to reinvestigate Washington's credit file when notified of inaccuracies, no reasonable jury could find for Washington under Section 1681i(a). Accordingly, Equifax is entitled to judgment as a matter of law. We explain these conclusions further below.

**I. Washington's Motions**

*A. Washington's Fourth Motion for Summary Judgment (Dkt. 49)*

Washington's fourth motion for summary judgment is procedurally and substantively defective. First, the procedural requirements of Rule 56, Fed. R. Civ. Pro., and of its local counterpart have been ignored.[6] Second, and more importantly, the

---

[6] Washington has not "identif[ied] . . . claims on which summary judgment is sought." Fed. R. Civ. Pro. 56(a). He has not supported his (implied) assertions that the material facts of this case cannot be genuinely disputed "by citing to particular parts of materials in the record," *id.* 56(c)(1)(A), nor by "showing that the materials cited do not establish the . . . presence of a

7

materials submitted by Washington do not even hint at Washington's entitlement to the relief he seeks. Most of them are simply irrelevant.

Washington has submitted a disc purporting to contain "recordings of plaintiff being told that his identity ha[s] been stolen during a phone conversation via phone with an agent at Springleaf Financial while incarcerated in the Westville Correctional Facility." Pl.'s Mot. Summ. J. (Dkt. 49), at 1.[7] Taking as true that a representative of Springleaf Financial told Washington his identity had been stolen, and taking as true that Washington's identity was in fact stolen, still that does not establish that Equifax reported inaccurate information on Washington's credit report. Still less does it establish that Equifax failed to establish reasonable procedures to maintain the accuracy of Washington's credit report or to reinvestigate Washington's reports of inaccuracies.

Washington has also submitted two unsigned, unsworn documents purporting to be affidavits from "Trans Union Credit Bureau" and "Experian Credit Bureau." Dkt. 49 Ex. 1, at 24–28. Both documents aver that "Equifax, Experian, Trans Union Credit Bureaus failed to remove inaccurate items from [Washington's] credit report for the second (2) time." *Id.* at 24, 26. We will not consider these documents. Affidavits in support of a motion for summary judgment "must be made on personal knowledge[.]"

---

genuine dispute [as to those facts], or that an adverse party cannot produce admissible evidence" to create such a dispute. *Id.* 56(c)(1)(B). He has filed no brief, S.D. Ind. L.R. 56-1(a), has made no statement of the material facts not in dispute, *id.*, and has not supported any asserted facts with admissible evidence. *Id.* 56-1(e).

[7] In fact, this disc contains numerous recordings of variable length, apparently every phone call Washington made while incarcerated over a period of several months. Washington has not pointed us to a particular recording and we have no duty to search the record. S.D. Ind. L.R. 56-1(h).

8

Fed. R. Civ. Pro. 56(c)(4). No conceivable basis appears for concluding that "Trans Union Credit Bureau" and "Experian Credit Bureau" had "personal knowledge" that Equifax failed to remove inaccuracies from Washington's credit reports. Moreover, an unsworn affidavit must be signed to be admissible, 28 U.S.C. § 1746, but these "affidavits" are unsigned.

Finally, Washington's case is not helped by the materials he offers in his *Motion to Enter News Article*, Dkt. 67 (apparently submitted at *Submission of Article*, Dkt. 68), and his *Submission of Discovery*. Dkt. 73. As noted, those documents purport to be notices from the Federal Trade Commission and AT&T, respectively, informing consumers of the 2017 Equifax data breach and recommending measures for preventing misuse of any stolen information. These documents can have no relevance to this case. They relate to the theft of vast amounts of private consumer information held by Equifax that was first disclosed to the public in the fall of 2017. As Washington filed his *Amended Complaint* on May 27, 2016, Dkt. 8, and may not re-amend his complaint by a motion for summary judgment, *see Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012), events occurring after May 27, 2016, can have no bearing here.

Washington's fourth motion for summary judgment fails to show the absence of genuine disputes of material fact and Washington's entitlement to judgment as a matter of law. The motion is therefore denied.

    B. *Washington's Fifth Motion for Summary Judgment (Dkt. 71)*

What is styled as Washington's fifth motion for summary judgment appears rather to be a response in opposition to Equifax's motion for summary judgment, a reply in

support of Washington's fourth motion for summary judgment, or some combination of the two. In any event, as a motion for summary judgment, it is nearly four months late, *see* Dkt. 40, at 2, and does nothing to establish Washington's entitlement to judgment as a matter of law. The motion is therefore denied.

## II. Equifax's Motion for Summary Judgment (Dkt. 60)

Equifax rests its motion for summary judgment both on its own evidence and on Washington's failure to respond to Equifax's requests for admissions.[8] Washington responds by offering new material not offered in support of his own motions for summary judgment[9] but nonetheless insufficient to create a triable issue of fact.

Equifax submits the declaration of a "Legal Support Associate," Dkt. 61 Ex. 3 (Smith Decl.) ¶ 1, who describes Equifax's procedures for ensuring the accuracy of its consumer credit reports. *Id.* ¶¶ 8–14. Equifax's declarant avers further that, on April 27, 2015, Washington called Equifax and "inquired about an alleged credit denial and a fraud

---

[8] In a footnote, Equifax also raises the affirmative defense of *res judicata*. Def.'s Br. Supp. Mot. Summ. J. (Dkt. 61) 3 n.1 (citing *Washington v. Equifax Credit Bureau*, 1:08-cv-132, 2009 WL 3756538 (N.D. Ind. Nov. 6, 2009), *aff'd sub nom. Washington v. Equifax Info. Servs., LLC*, 373 F. App'x 633 (7th Cir. 2010)). That defense fails for Equifax's inability to demonstrate identity of cause of action with respect to the accrual dates of Washington's FCRA claims in that case and in this. *See Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011) (elements of *res judicata*).

[9] Cognizant that, on crossmotions for summary judgment, a court should consider both parties' evidence "as a whole," *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 671 (7th Cir. 2011), "regardless under which motion the evidence is offered[,]" *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011), for the sake of clarity and avoiding repetition we have presented the parties' evidence organized under the motion relative to which it was submitted. We note here that Washington's submissions in response to Equifax's motion do not change our analysis of Washington's motions, nor do Washington's submissions in support of his motions change our analysis of Equifax's motion.

alert." *Id.* ¶ 24. Equifax requested that Washington send two pieces of identifying information to Equifax "to confirm his identity[,]" *id.*, but Equifax never received such information. Equifax's declarant avers finally that, on April 30, 2016, Equifax received a letter from Washington addressed to the "Trans Union Dispute Department." *Id.* ¶ 19; *see* Dkt. 61 Ex. 3 (Smith Decl. Ex. 1), at 7 (Washington's letter). In his letter, Washington asked the "Trans Union Dispute Department" to "remove the following inaccurate items" from his credit report, giving the names of seven companies. Dkt. 61 Ex. 3 (Smith Decl. Ex. 1), at 7. "None of the seven listed accounts were reporting on [Washington's] Equifax file at the time it received" Washington's letter. Dkt. 61 Ex. 3 (Smith Decl.) ¶ 21.

Equifax also relies on Washington's failure to respond to its requests for admissions. One of Equifax's lawyers avers that, on January 10, 2017, Equifax requested eleven admissions from Washington, including an admission that "Equifax did not violate the [FCRA] or any other laws in its handling of [Washington's] credit file." Dkt. 61 Ex. 4 (Campbell Decl. Ex. 1), at 5. As of June 27, 2017, Washington had not responded.

In response to Equifax's motion, Washington submits a mix of clearly irrelevant and arguably relevant material. Washington submits two records of credit-report disputes, both recorded as lodged with Equifax more than a year after Washington's *Amended Complaint* was filed. Washington also submits a notice of credit denial, dated approximately six months after the *Amended Complaint*, purporting to rest "in whole or in part" on information obtained from Equifax. Dkt. 62 Ex. 2, at 4. Finally, Washington submits what appears to be a verbatim copy of the letter he mailed to the "Trans Union

Dispute Department," except this submission is addressed to the "Equifax Dispute Department," dated April 24, 2016. *Id.* at 5.

Washington's submissions, assuming their authenticity and admissibility for the sake of argument, do not suffice to create genuine disputes of material fact. The submissions dated after the *Amended Complaint* cannot be relevant to the claims asserted therein and cannot be used to amend the *Amended Complaint*, as explained above. The letter addressed to the "Equifax Dispute Department," while permitting the reasonable conclusion that inaccuracies at one point appeared on Washington's Equifax credit report, does not, on its own or in concert with Washington's other submissions, create a genuine dispute as to whether Equifax nonetheless employed reasonable procedures for ensuring the accuracy of Washington's credit report, nor as to whether Equifax breached its obligation to reinvestigate Washington's contentions of inaccuracy.

Independently, Washington's failure to respond to Equifax's requests for admissions as to case-dispositive facts results in those facts being deemed admitted, Fed. R. Civ. Pro. 36(a)(3), and such default admissions may serve as the factual predicates for Equifax's motion for summary judgment. *McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003) (citing *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987)). Equifax is entitled to summary judgment on that ground as well.

### III. Remaining Pending Motions (Dkts. 67, 72, 74)

In analyzing the parties' respective motions for summary judgment, for the sake of argument, we have given Washington the benefit of a favorable ruling on each of the

remaining pending motions. As we have concluded that Equifax is nonetheless entitled to summary judgment, the remaining pending motions are denied as moot.

## Conclusion

For the reasons above, Washington's motions for summary judgment are DENIED. Equifax's motion for summary judgment is GRANTED. All other pending motions are DENIED as moot. Final judgment shall be entered by separate document. Fed. R. Civ. Pro. 58(a).

IT IS SO ORDERED.

Date: 2/8/2018

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

CHRISTOPHER E. WASHINGTON
408 E. Tipton St.
Huntington, IN 46750

N. Charles Campbell
KING & SPALDING LLP
ccampbell@kslaw.com

J. Anthony Love
KING & SPALDING LLP
tlove@kslaw.com

Colin C. Poling
SCHUCKIT & ASSOCIATES - Zionsville
cpoling@schuckitlaw.com

Laura K. Rang
lrang@schuckitlaw.com